Our next argument is Aventis v. Barr, the 1213 case with Mr. Barr, the 1213 case with Mr. Barr, the 1213 case with Mr. Barr, the 1213 case with Mr. Barr, the 1213 case with Mr. Barr, the 1213 case with Mr. Barr, the 1213 case with Mr. Barr is one that has to do with the misallocation of the burdens at the preliminary injunction stage. In particular, the district court found that the defendants had raised a substantial question, going to the merits of their affirmative defense, and that the plaintiffs hadn't overcome that showing by showing a lack of substantial merits. After the district court's ruling, the Supreme Court decided the Gonzales case this year, of course, and the Supreme Court changed the burdens. They changed the burdens applied by the district court and actually the burdens that reflect the prevailing view in this court. What the Supreme Court did was affirm a preliminary injunction and said that the ground was that the defendant government asserting an affirmative defense had not carried a likelihood of success on the merits burden, and the Supreme Court explained that the burdens at the preliminary injunction stage tracked those at the trial. So as I recall, Gonzales, I don't know, I mean I think Gonzales also was consistent with prior Supreme Court opinions, and as you say, just simply said the burdens track, the burdens at trial. Are you suggesting that our opinion in Amazon.com is therefore inconsistent with Gonzales? Exactly what I'm suggesting. How? It's inconsistent because instead of what Amazon does, requires a, raising a substantial question on the affirmative defense of the defendants, say validity as in this case, the Supreme Court requires a likelihood of success on the merits, and the Supreme Court went on, besides saying that the burdens track those at trial, it said that unless the defendant carries that burden, likelihood burden, the plaintiff, the movement must be deemed likely to prevail. So you're saying substantial question, what should the burden therefore be? Should it be the same burden that exists in trial? Identical? It should be a likelihood of success on the merit of the affirmative defense, having in mind on anticipation, which is the issue here, that there happens to be a clear and convincing burden at trial. Why doesn't substantial question dovetail what you're saying? Because Saying that a substantial question of validity is the same as a likelihood of success on the validity question. Because it is not the same, because it is less, and this court in Amazon and the district court, after the defendants raise a substantial question, shift the burden to the movement to overcome that, and what the Supreme Court is saying, and said in so many words, is that the movement did not have to overcome the showing in that case by the defendant on its affirmative defense. And in that case, the evidence was in equipoise, according to the Supreme Court, and who had the burden made a big difference. So I submit, Your Honor, that the error here, which happens And we have that situation here, Mr. Sobel. We've decided a metabolite case involving loratadine that's remarkably similar to the facts of this case. Why doesn't that control the outcome? If I then may leave Gonzales and the burdens I shifted it on you, sure. Get to the merits. I need to say a word about the claims here. There's a method claim, it's a method of treating a patient with allergies where the patient is liver impaired with a compound. We understand. The method is limited to helping the liver impaired people. And you're suggesting that's a different group than the broad group, but the method's exactly the same. You're administering fexofenadine, and they're taking it for allergies, and they're getting treatment for allergies. Why isn't this the shearing case all over again? It is not the shearing case because in shearing, the patients were the same in each case, and every time you practiced the prior art process of administering loratadine, you got the metabolite DCL. Here, the patient populations are different. There's a genus, a patient One group you're administering to everybody, that's the genus, and then you're saying, well, there's a species where we only administer out of that group to those who are liver impaired. My Venn diagram tends to show that your group is entirely within the other group, isn't it? I'd like to comment on your Venn diagram and then go on to say more about shearing. Your Venn diagram is a little wrong, and the reason it's a little wrong, Your Honor, is because the prior art disclosure is treating a patient. Not every patient in the world, but a patient is chosen from among those in the genus, in the prior art, of allergy patients. There's not a word about liver impaired patients, which is the species in the claim. So, we do have a distinction here that's quite important and dispositive, and that is that the claim is directed to a species of a genus. There was no such thing in the shearing case. Aren't you just talking, though, isn't your species just recognizing an unrecognized benefit of the fexofenity administration, and isn't that the whole point of shearing, that an unrecognized benefit doesn't defeat the anticipation claim? You don't have to have knowledge of skill in the art. If it's necessarily present, which it necessarily would have been, it's still anticipatory. Am I missing something? Yes, respectfully. First of all, you're viewing the claim, the genus, as if it was practiced end-to-end on all patients, which is the defendant's argument. If that were true, then every genus would anticipate every single species member in that genus. But that's not the law. The group that they administered to was a patient, as you point out, but that could have been a patient with liver impairment, couldn't it? It is a possibility, and I counted 12 times in reported decisions when this court said a possibility is not enough, a probability is not enough, an occasional result is not enough. And so I submit that there are two major problems with Your Honor's syllogism, if that's what it is. First, that you would be throwing out the species claims that have been held universally by this court to not be anticipated by a prior arch genus, that is, unless they're individually disclosed, so I'm putting that aside, because that's not the case here. And you're throwing out, I submit, the rules that say a possibility is not enough. It's only a remote possibility that when you practice, to go back to your Venn diagram, judge, when you practice the whole, every member of the genus in the prior arch, it's undisputed here that there are only about 1% of patients who are liver impaired. So it's a remote possibility that you're going to hit one of those, and that possibility is exactly what has been held over and over again to be not sufficient. Does that mean that you could really always defeat the outcome in shearing by making the unrecognized principle of the metabolite, in this case, liver impairment overriding, or in the shearing case, it was, there was not, the actual development of the metabolite was the unrecognized benefit, but if you claimed that as a part of your claim, you then have overridden the effect of shearing, the anticipatory effect? Exactly. In your last phrase, we're talking about anticipation. Obviousness was not addressed by the district court. And what we're saying is that, yes, if you claim a species as against the prior arch genus, there is no anticipation, because that's why this court says selection inventions are, quote, In the case that your honor has only, respectfully, partially put, there might be a big obviousness problem. Sure. And we have other answers that I'm not going to get into about our particular situation on obviousness. Well, you're going to claim unexpected results and a whole bunch of other secondary considerations. I can see that coming. Well, we have powerful reasons, which I prefer, since it's not before us, and I'm on the yellow light. You don't really need to argue. That's not before us. You said it was a remote possibility that you'd hit the liver-impaired people? That's right, your honor, given the 1%. No, no, it's 1% of the population that's got the liver problem, right? Yes. But you'll hit every one of them. If you practice end-to-end, but if you practice end-to-end, your honors, if that's what you're going to rule, your honors, you're going to throw out the settled expectations from this court's many decisions that say that selection inventions are ubiquitous. Every genus would disclose every single member if you view it as practiced end-to-end. But that's not the law, and it hasn't been the law. And as I said, it's been said over and over again, your honors, started with the metabolite case where that argument was called wholly meritless by this court. Your honors, I see I'm into my yellow light, and of course I'm answering a lot of questions. Please go ahead, we'll take care of you if you need more time. Great. Your honor, in the course of the discussion mentioned, isn't this an unappreciated property of the prior art? And I'd like to come back to that for a second. Isn't this like shear? Well, there was no genus species in shear, and I've said that. And it's well to remember here that this claim has, among others, two limitations. One has to do with the liver-impaired target population in the claim, and the other has to do with avoiding the cardiac side effects of terfenity, which is the parent compound of fexofenity. We're talking of here, our distinction here, is the liver-impaired distinction. The methods are identical, Mr. Sobel. I'm still struggling with why there's a genus species. Well, take Lily v. Bond, where this court held that humans were a species of the animal genus. So, there's nothing inherently that requires us, pardon the use of the word inherently, that requires us to dismiss patient populations and targeted therapies, which I submit this court should want to encourage. That is, where particular groups of people have problems, and someone figures out a way to solve them, that's the kind of thing that I submit patents are for. But to get back to this court's precedents, and away from the very desirable policy I've just identified, if your honors are not going to throw out the many decisions and the subtle expectations of patentees and applicants for having species not be anticipated by the prior art genus of which they are a member, and if your honors are not going to throw out the legion of cases that say possibilities, like the remote possibility here, the 1% possibility here, is not enough, then we're right, and the defendants are wrong. And I submit, again, your honor, that your Venn diagram and your analysis of Shearing doesn't fit this court's many precedents in that regard. On the unappreciated property, I'd just like to contrast the In Re Me case, which the defendants cite, and that was a case in which the patient populations in both the prior art and the claim were the same, and in which when you practice the claim, when you practice the prior art, I should say, you practice the claim every time, unlike the 1% possibility here, and the different patient populations. May I reserve the time? You may, Mr. Sobel. Thank you. Would you please give Mr. Fadenhauer an additional five minutes, and we'll restore five minutes of rebuttal time for Mr. Sobel, and you'll have an additional five if you need to use it, Mr. Fadenhauer. Thank you, your honor. May I please report very briefly on the issue of whether the burden was improperly allocated? I think what the district court did here was completely consistent with Amazon, which is completely consistent with Gonzales. The burden was placed on the defendants to show a substantial question with respect to validity of the patent, and what this court's precedents have said is that if a defendant makes that show, demonstrates the substantial question, then a patentee can no longer rest on the presumption of validity if the patentee wants an injunction. He needs to come forward with some evidence to cast doubt on whether or not there is a substantial question. Is there a burden shifting then under Amazon? I do not think so, your honor. I think the burdens under Amazon for the preliminary injunction are identical to the burdens that adhere at trial. The quantum of proof is different, but the burdens remain on the same parts. So you're saying that once you've established a substantial question, the fact that the other side is allowed to come forward with something else is not a burden shift? It's exactly like it would be at trial, your honor, when the defendant comes forward in its case and shows that the patent is invalid for a particular reason. In the rebuttal case, the patentee can come back and try to demonstrate that, in fact, it isn't invalid. There's no difference at all, your honor. Turning to the anticipation point, Mr. Sobel makes the point that somehow ruling in affirming the district court here, we will eliminate the ability to have a patent on a species if the genus is in the prior order. Well, the policy here is so compelling, though. Wouldn't we want people to continue to experiment with drugs, even a drug that has a deficiency like fexofenadine, and find out that for one group of people it's not a deficiency, it's a magnificent cure? That's exactly what we want, a second use, a better use. Absolutely, your honor. And you're going to do away with that? Not in any way. It's anticipatory? Not in any way, your honor. A second use, a new use of the drug, or different? No, this is the same use, it just hit a different group. And they claimed it as such, so that we know we're just dealing with this minor group now. And they foreclose all other uses of it. This court's cases, your honor, have made abundantly clear that the key issue is whether the use is the same. And here, the same drug in the identical regimen is being administered for the identical purpose. But what would happen? And it works identically, even in the subpopulation. Now we understand the facts, but let's go back to the hypothetical, which is the whole drug is going to be withdrawn from the market completely, unless we can do the research and find out that for some small group of the population it doesn't have that negative benefit. In fact, it maximizes the benefit. And that, obviously, is not this case, your honor. It was a prior art molecule that had a problem. This drug, fexafenidine, works identically in every patient. The prior art teaching of the CAR-129 patent was to give this drug to all patients. And in all of those patients, it works exactly the same. There is no difference in the way the drug works, in the result that the drug achieves. So this is very different from a situation where in a particular subpopulation you might have a different result. Those aren't the facts on this case. This case really is like Shearing, your honor. And it's also like Paracone, where it's the same method. No, in Shearing, every administration worked exactly the same way. In this case, every administration doesn't work the same way. It helps some people more than others. Well, your honor, I think in Shearing, there was some opinion in Shearing. Every time you took loratadine, it turned into dexaloxychloro-loratadine. The patentee had come forward in that case, your honor, with some indication, based on animal studies and metabolite projections, that you wouldn't every single time necessarily get the metabolite. And what the court said was, the focus needs to be on what is the natural result that flows from practicing the prior art. And in that case, the natural result flowing from administration of the parent was the production of the metabolite. Here, the natural result that flows from administration of this drug to all patients is that patients with hepatic impairment will receive the drug. The district court made a factual determination on the record before it, that when you administer the drug in accordance with the CAR method, you will give it to people in the subpopulation. And in fact, the patents in suit refer to the CAR patent and say, the drug in our patent is made and used as described in CAR. It is the same method, your honor, and it's not a patentable distinction based on the precedents from this court. The Lilly versus Barr decision, your honor, doesn't lead to a different result. In that case, there was a mention of a genus species, but what they said was, in that case, prior species anticipated the genus. It's a different situation. Unless the court has other questions. Why isn't this a genus species claim? Your honor, I would not describe this as a genus species. This is a situation where it is given to all patients. The teaching of the CAR is not a genus in the sense of a group of chemical compounds or a range of temperatures. And now they've come in and said, but we're not going to do that anymore. We're not going to give it to everybody. Now we're only administering it to the liver impaired. The fact that they want to narrow, your honor, And we're going to get a better benefit. Every narrowing of the prior art does not lead to a patentable invention. In your honor's decision, in the CARICOM case, No, but if we have a species that is not anticipated by the genus, that's our standard law. It is true that in the chemical compound situation where you have a disclosure of a genus And then you'd have to come back under 103 and we'll deal with that. You don't necessarily anticipate a species. Sometimes a genus will anticipate a species. And the key question is, how do we read the prior art? What is the teaching of the prior art? And here the district court found that the prior art didn't teach a genus as such. The prior art taught administration to all patients. And all patients necessarily and inevitably includes the subpopulation with hepatic impairment. Just like in the CARICOM case, your honor, a similar result was achieved where you gave the drug, the administration, and it resulted naturally in using it for the treatment of damaged skin. And the same situation is here. The fact that in CARICOM the prior art gave a range of active ingredient that was broader than the claim did not prevent anticipation. The court said the prior art range is broader, but it encompasses the range in the claim convention and this is the same use and therefore the claim is anticipated. But a species will always fall within the genus. That's the definition of a species. It's within the genus. That's correct, your honor. In this case, but our law says if it's a species genus it's not anticipatory. You've got to use the obvious. With all due respect, your honor, I think what the law says is that a genus does not necessarily anticipate a species. There is no hard and fast rule. I think what this court's precedents have said is we need to look at the teaching of the prior art and see what it discloses. And sometimes a genus will not anticipate a species, but sometimes a genus may. And the district court here made a factual determination that the teaching of the CARD 129 patent was to administer this drug to all patients. And that teaching of all patients necessarily included patients with hepatic impairment, and the district court relied on an affidavit from our expert, which was unopposed on the notion that the CARD 129 patent included administration to people with hepatic impairment. Now Mr. Sobel would argue with you and say that that was an error, and not a factual error, an error of law in construing the patent to apply to all people. He would say it applies only to a patient. Your Honor, I think that the teaching of a prior art patent is a question of fact, and anticipation is a question of fact, and inherency is a question of fact. Each of those fact determinations was made by the district court here, and unless clearly erroneous is entitled to be confirmed. Thank you Mr. Badenhauer. Sobel, we thank you. On Gonzalez, the Amazon case says the movement plaintiff must show that its infringement claim will likely withstand the defendant's challenges to the validity of the patent. So contrary to what Mr. Badenhauer said, the Amazon case places that burden on the movement, different than on, of course, the defendant asserting the affirmative defense. And the Supreme Court in Gonzalez said in response to the government's argument that the plaintiffs I quote from the court, the plaintiffs should have borne the burden of disproving the affirmative defense. The Supreme Court said it was rejected. So there's a clear dichotomy in two respects. Likelihood of success for defendants asserting the affirmative defense, not merely raising a substantial question. Second, no shifting of the burden to the movement. A few important points about the anticipation by adherence in finding of the district court a substantial question. The same use, the fact that something is the same use does not defeat the genus species distinction. This court in Adafina in 2006 so held. In other words there the method of issue was a way of making a compound and the difference between the prior art and the claim was a narrower temperature range narrower than the broader one in the prior art genus. Held, no anticipation, the narrower range is a species of the genus in the prior art. Can't be anticipatory. I didn't hear any answer from Mr. Fadenhauer about the violence that his position would do to the ubiquitous selection invention law of this court. Nor did I hear anything about the violence his position would do to the possibility law repeated as I said over and over again by this court. As for Lili V. Bard it certainly is a holding that the animals were a genus and the humans were a species and yes Mr. Fadenhauer is partly right. It's the species coming before the genus the species being in the prior art and the claim being to the genus that is an anticipation situation and that was the holding predicated on the species genus relationship that was held. Mr. Fadenhauer had to concede that chemical genuses are sometimes not anticipatory of the members well either they are or they aren't. Either every chemical genus practices each member end to end contrary to the law of this court on genuses not anticipating their species members or it doesn't and the law of this court is emphatically on our side of that question and the patent and the car reference I should say the prior art reference most certainly doesn't say I claim administering fexofenadine to every single allergy patient in the world. It doesn't say that it says a patient selected from among the members of the genus. It's just like a chemical genus your honors have seen it over and over again. A compound from among the many compounds in formula one. Same thing. We're talking about a basic axiom and I respectfully submit that your honors cannot upset that and the necessarily the prior art genus does not necessarily defeat the patentability of a species. Another reference by Mr. Fadenauer happens to be somewhat incorrect. It doesn't necessarily defeat it if it's obvious or if it's individually disclosed but a prior art genus does not anticipate members of the genus that are not individually disclosed. Those are your honors holdings over and over again. We rely on our brief on the inducement issue and considerable evidence showing that the district court did not make a clearly erroneous finding in support of inducing infringement. Thank you your honors. Thank you Mr. Sobel.